UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

RICHARD WASHINGTON III,               :

                              :

          Plaintiff,             :

                              :

      -v-                     :

                              :

JOMAX LLC d/b/a JOMAX RECOVERY SERVICE  :
and JODI L. SMITH,                 :

                              :

          Defendants.         :

                              :
------------------------------------------------------------------------X

25-cv-10496 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Richard Washington III ("Plaintiff") moves, pursuant to Federal Rule of Civil

Procedure 65, for a preliminary injunction restraining Jomax LLC d/b/a Jomax Recovery Service

("Jomax") and Jodi L. Smith ("Smith," and with Jomax, "Defendants") from furnishing,

reporting, or re-reporting collection tradelines concerning Plaintiff to any consumer reporting

agency, including but not limited to Experian, TransUnion, and Equifax.  Dkt. No. 14.  The

following constitutes the Court's findings of fact and conclusions of law pursuant to Federal

Rule of Civil Procedure 52(a)(2).  For the reasons that follow, the motion for a preliminary

injunction is denied.

Plaintiff brings this lawsuit alleging claims under the Fair Debt Collection Practices Act

("FDCPA") and New York State statutory and common law.  Dkt. No. 8.  Plaintiff is a natural

person who was at one point during the relevant time period physically located in Las Vegas,

Nevada.  *Id.* ¶¶ 20, 24.  Jomax is an Arizona limited liability company engaged in the business of

collecting alleged debts.  *Id.* ¶ 25.  Smith is the President and/or owner of Jomax.  *Id.* ¶ 28.

In his complaint, Plaintiff alleges that Defendants, in their capacities as debt collectors,

furnished information about Plaintiff to nationwide consumer reporting agencies ("CRAs"), including Experian, Equifax, and Transunion. *Id.* ¶ 51. As a result of Defendants' furnishing, a derogatory item appeared on Plaintiff's consumer credit reports under the "Collections" section. *Id.* ¶ 52. The tradeline identifies Jomax Recovery Service, the tradename under which Jomax does business, as the collector and lists Hudson Insurance Company ("Hudson") as the original creditor. *Id.* ¶¶ 41, 53. The tradeline reports an alleged balance of approximately $7,682. *Id.* ¶ 54. Plaintiff alleges that Defendants selected and maintained the consumer "collection" reporting format knowing that it would depress his consumer credit score and materially increase the likelihood of credit denial, unfavorable pricing, and loss of access to consumer credit products. *Id.* ¶¶ 4, 57–59. Defendants allegedly did so as leverage to pressure payment by harming Plaintiff's consumer credit standing. *Id.* ¶ 59. In or about October 2025, Plaintiff sent written communications to Defendants disputing the alleged debt and Defendants' consumer reporting and demanding deletion and/or correction of the consumer collection tradeline. *Id.* ¶¶ 79–80. Defendants refused to delete the consumer collection tradeline, continued to furnish and/or maintain the consumer collection tradeline, and failed to communicate to the CRAs that the alleged debt was disputed. *Id.* ¶¶ 82–84. Plaintiff alleges that, on or about November 13, 2025, he applied online for consumer credit products from New York-based financial institutions, including American Express, Citibank, and JPMorgan Chase, and was denied in whole or in part due to the derogatory consumer collection tradeline that Defendants placed and maintained on Plaintiff's consumer files. *Id.* ¶¶ 8, 94–96, 102.

The complaint alleges a host of FDCPA violations. Plaintiff claims that Defendants failed to send Plaintiff the written notice required to be sent following the initial communication with a consumer in connection with the collection of any debt in violation of 15 U.S.C.

§ 1692g(a).  *Id.* ¶¶ 112–35.  He also alleges that Defendants failed to cease collection of the debt in violation of 15 U.S.C. § 1692g(b) after Plaintiff in October 2025 informed Defendants that he was disputing the alleged debt.  *Id.* ¶¶ 136–47.  Next, Plaintiff alleges that Defendants used false, deceptive, and misleading representations and means to collect the debt in violation of 15 U.S.C. § 1692e.  *Id.* ¶¶ 148–63.  Plaintiff further alleges that Defendants failed to communicate that the alleged debt was disputed in violation of 15 U.S.C. § 1792e(8).  *Id.* ¶¶ 166–77.  Plaintiff alleges that Defendants engaged in deceptive conduct in connection with the collection of a debt in violation of 15 U.S.C. § 1692e(10).  *Id.* ¶¶ 178–88.  He alleges that Defendants used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f. *Id.* ¶¶ 189–99.  He alleges that Defendants engaged in harassment, oppression, or abuse in connection with the collection of a debt in violation of 15 U.S.C. § 1692d.  *Id.* ¶¶ 200–09.  And he alleges that Defendants issued threats of retaliatory litigation and accusations of malicious conduct in connection with the collection of an alleged debt in violation of 15 U.S.C. § 1692e(5). *Id.* ¶¶ 210–19.  He also alleges violation of New York General Business Law § 349 and asserts common-law claims for credit defamation, negligence, negligent misrepresentation, and prima facie tort.  *Id.* ¶¶ 220–246.

Plaintiff has submitted a nine-paragraph declaration in support of his motion for a preliminary injunction.  Dkt. No. 15.  He asserts that as a result of Defendants' continued maintenance of the consumer collection tradeline with nationwide CRAs, he has continued to experience adverse credit outcomes, including denials of consumer credit.  *Id.* ¶¶ 2–3.

Plaintiff does not identify the nature of the underlying debt in either his Amended Complaint or in his declaration in support of the motion for a preliminary injunction.  In his original complaint, however, Plaintiff alleged that he executed an indemnity agreement in favor

of Hudson in connection with a surety bond that Hudson issued to the Nevada Department of Taxation.  Dkt. No. 2-1 ¶ 2.  He explains that at some point, the Nevada Department of Taxation asserted a claim against the bond and Hudson paid an amount on Plaintiff's behalf.  *Id.* ¶ 22.  Hudson subsequently retained Jomax to attempt to collect from Plaintiff an alleged indemnity balance of $7,682 plus interest and fees.  *Id.* ¶ 23.  Plaintiff concluded that the alleged obligation at issue in this case arose, "if at all, from a commercial surety indemnity agreement, not from a consumer loan, credit card, retail account or other consumer transaction for personal, family, or household purposes."  *Id.* ¶ 24.

Defendants submitted a motion to dismiss Plaintiff's Amended Complaint or to transfer venue under 28 U.S.C. § 1404(a).  Dkt. No. 19.  Smith filed a declaration in connection with that motion.  Dkt. No. 19-4.  That declaration elaborates on the facts of this case and the allegations in the complaint.  Plaintiff executed an indemnity agreement in favor of Hudson on or about August 11, 2020.  *Id.* ¶ 5.  Under the agreement, Plaintiff agreed to reimburse Hudson for any amounts Hudson paid under a surety bond issued on Plaintiff's behalf to cover unpaid sales taxes owed by his company, HMPL Worldwide, LLC, to the Nevada Department of Taxation.  *Id.* ¶ 6.  On or about December 28, 2023, the Nevada Department of Taxation asserted a claim against the bond.  *Id.* ¶ 7.  Hudson paid the principal amount of $5,500 on Plaintiff's behalf pursuant to the bond.  *Id.* ¶ 8.[1]  After Plaintiff failed to reimburse Hudson for this payment, Hudson retained Jomax to collect the balance owed by Plaintiff.  *Id.* ¶¶ 8–9.  As of the date of the declaration, the unpaid balance totaled $7,776, exclusive of accrued interest and collection fees.  *Id.* ¶ 9.

Smith disputes Jomax's allegations of an FDCPA violation.  She states that, in the

---

[1] The Court disregards the typographical error in Smith's declaration which reports the amount of the payment as $5,5000.  *Id.* ¶ 8.

4

ordinary course of Jomax's business and before the debt was reported to any CRA, written collection notices were sent to Plaintiff dated September 16, 2024, October 14, 2024, and October 29, 2024, containing the language required by 15 U.S.C. § 1692g(a). *Id.* ¶¶ 10–11, 13. The notices informed Plaintiff that, unless the debt was disputed in writing within thirty days of the notice, Jomax would assume the debt was valid and that the outstanding debt could be submitted to a CRA if Plaintiff failed to fulfill the terms of the credit obligation. *Id.* ¶¶ 11–12. While Jomax made multiple attempts to contact Plaintiff by phone both before and after the reporting date, Plaintiff never responded and never requested validation of the debt. *Id.* ¶ 14. Upon receiving the first notice of dispute through Plaintiff's counsel, Jomax reported the debt as disputed on October 5, 2025, and verified that it was reflected as disputed in the credit reporting system. *Id.* ¶ 16.

## DISCUSSION

"A preliminary injunction is an 'extraordinary and drastic remedy'" and "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). The movant must "by a clear showing[] carr[y] the burden of persuasion" that such relief is warranted. *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).

In the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation and internal quotation marks omitted). A sufficiently serious question as to the merits of the case to make it a fair

ground for litigation means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83 (2d Cir. 2024).

Plaintiff has failed to establish all three elements of the preliminary-injunction standard.

To state a claim under the FDCPA, a plaintiff must satisfy the following threshold requirements: "(1) the plaintiff must be a 'consumer,' (2) the defendant must be a 'debt collector,' and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Abramov v. I.C. Sys., Inc.*, 54 F. Supp. 3d 270, 272–73 (E.D.N.Y. 2014) (citation and alterations omitted); *accord Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 409 (S.D.N.Y. 2023); *Iacovo v. Magguilli*, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025). The FDCPA does not cover every "debt" that a consumer might incur. The statute "applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (summary order) (quoting *Degrossiellier v. Solomon & Solomon, P.C.*, 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2021)). The statute defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5), and defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt," *id.* § 1692a(3); *see Rosa v. Mandarich L. Grp., LLP*, 2024 WL 871209, at *5 (S.D.N.Y. Feb. 29, 2024). "[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006).

6

By the statute's plain language, it is not sufficient that the plaintiff be a natural person or even a consumer obligated to pay a debt. *See Paushok v. Ganbold*, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order). What is required is that "the purported debt arose from a consumer transaction, rather than a commercial one." *Id.*

Plaintiff offers no evidence of a qualifying "debt" under the FDCPA. "Whether a debt falls under the FDCPA does not depend on the source of a debtor's funds, but rather the nature of the transaction." *Downing v. IOU Cent., Inc.*, 2019 WL 3502915, at *9 (N.D. Ga. May 29, 2019), *report and recommendation adopted*, 2020 WL 7409660 (N.D. Ga. Mar. 25, 2020). But Plaintiff has submitted no evidence regarding the nature of the underlying transaction. Indeed, the evidence that exists would suggest that the transaction with which Plaintiff incurred the obligation was commercial and not personal. That is what Plaintiff alleged in his original complaint, which constitutes an evidentiary admission. *See* Dkt. No. 2-1 ¶ 24 (alleging that the obligation arose, "if at all, from a commercial surety indemnity agreement, not from a consumer loan, credit card, retail account or other consumer transaction for personal, family, or household purposes"); *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250 (2d Cir. 2024) ("An allegation made only in a pleading that has been withdrawn or superseded is not a judicial admission, although it would, if offered against the pleader, qualify as a party admission within the meaning of Rule 801(d)(2) of the Federal Rules of Evidence."). Thus, Plaintiff has not established a likelihood that the FDCPA applies at all.

Plaintiff also offers no evidence of a FDCPA violation. Although he alleges in his Amended Complaint that Jomax failed to send him the written notice that all debt collectors must send in connection with a qualifying debt and that Jomax failed to report to the CRAs that the debts were disputed, Dkt. No. 8 ¶¶ 112–35, 166–77, he offers no evidence to support those

allegations.  The allegations are disputed.  *See* Dkt. No. 19-4 ¶¶ 10–16.  He also offers no evidence of any false or misleading statement made to a CRA or that Defendants owed him a duty sufficient to support a claim in negligence.

Plaintiff also has offered insufficient evidence of irreparable harm that he would suffer in the absence of an injunction and that an injunction would prevent.  He claims that if the collection tradeline remains reported, he faces a risk of denial of credit, less favorable credit terms, or other adverse outcomes.  Dkt. No. 15 ¶ 5.  But those harms may remedied by money damages and therefore do not constitute irreparable injury.  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.").

Finally, Plaintiff has not established that the balance of the equities or the public interest favor relief.  As Defendants argue, "Plaintiff's alleged hardship is entirely of Plaintiff's own making; having failed to satisfy a commercially guaranteed obligation, he now asks this Court to intervene so that he may more easily obtain additional credit."  Dkt. No. 18 at 3.  There is no equitable interest in preventing the alleged creditor on a loan in default from reporting the fact of that obligation to CRAs.  Nor is there a public interest in depriving future potential creditors of the information in Defendants' possession.

## CONCLUSION

The motion for a preliminary injunction is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 14.

SO ORDERED.

Dated: February 9, 2026
       New York, New York

_____

LEWIS J. LIMAN
United States District Judge