USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD WASHINGTON III,

Plaintiff,

-v-

JOMAX, LLC d/b/a JOMAX RECOVERY SERVICE and JODI L. SMITH,

Defendants.

25-cv-10496 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Jomax LLC d/b/a Jomax Recovery Service ("Jomax") and Jodi L. Smith ("Smith" and together with Jomax, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Amended Complaint ("AC") of Plaintiff Richard Washington III ("Plaintiff") with prejudice and, in the alternative, for transfer of venue pursuant to 28 U.S.C. § 1404(a). Dkt. No. 25. For the reasons that follow, the motion is granted.

**BACKGROUND**

For purposes of this motion, the Court accepts the well-pleaded allegations of the AC as true.

Plaintiff is a natural person who was located in Las Negas, Nevada at the relevant times here. Dkt. No. 8 ("AC") ¶¶ 20, 24.

Jomax is alleged to be an Arizona limited liability company engaged in the business of collecting alleged debts and which regularly collects or attempts to collect debts allegedly owed or due to another, including by furnishing collection tradelines to consumer reporting agencies

("CRAs"). *Id.* ¶¶ 25, 40.[1] Jomax holds itself out to the public as a "recovery" or "collection" company, operating as "Jomax Recovery Service." *Id.* ¶¶ 27, 41. Smith is the President and/or owner of Jomax and a controlling decisionmaker who personally participated in, directed, authorized, and ratified the collection and consumer reporting conduct at issue in this lawsuit. *Id.* ¶¶ 28, 45. She personally communicated with Plaintiff's counsel and acted as the agent and decisionmaker for Jomax concerning the challenged collections communications, the furnishing and maintenance of the consumer collection tradeline, and the refusal to delete or correct it after dispute. *Id.* ¶ 29.

This action arises from Defendants' furnishing and maintenance of a negative consumer collection tradeline on Plaintiff's consumer credit files and reports.[2] *Id.* ¶ 1. Plaintiff alleges that Defendants furnished information about Plaintiff to nationwide CRAs, including Experian, Equifax, and TransUnion. *Id.* ¶ 51. As a result of Defendants' furnishing, a derogatory item appeared on Plaintiff's consumer credit reports under the "Collections" section. *Id.* ¶ 52. The tradeline identifies JOMAX RECOVERY SERVICE as the collector and lists HUDSON INSURANCE COMPANY as the original creditor and reports an alleged balance of approximately $7,682.00. *Id.* ¶¶ 53–54. The placement of the tradeline in the "Collections" section thus communicated to creditors and other users of consumer reports that Plaintiff had defaulted on a consumer obligation and presented an elevated credit risk. *Id.* ¶ 55.

In or about October 2025, Plaintiff, through counsel, sent written communications to Defendants disputing the alleged debt and disputing Defendants' consumer reporting. *Id.* ¶ 79.

---

[1] Consumer reporting agencies are occasionally referred to as credit reporting agencies.

[2] "A tradeline is a description of a debtor's credit status prepared by a creditor and provided by that creditor to credit reporting agencies." *In re Anderson*, 668 B.R. 753, 761 (Bankr. S.D.N.Y. 2025) (citing *Bruce v. Citigroup Inc.*, 75 F.4th 297, 300 (2d Cir. 2023)).

Plaintiff demanded that Defendants delete or correct the consumer collection tradeline and cease consumer reporting of the alleged obligation. *Id.* ¶ 80. Defendants refused to do so and continued to furnish and/or maintain the consumer collection tradeline. *Id.* ¶¶ 82–83. Defendants also did not communicate to the CRAs that the alleged debt was disputed and continued to publish and maintain the tradeline as a consumer "collection" account without dispute notation. *Id.* ¶¶ 84–85. Plaintiff further alleges that Defendants' communications escalated after Plaintiff asserted statutory rights and demanded deletion and that Defendants threatened retaliatory litigation, counterclaims, and "malicious prosecution" in response to Plaintiff's pursuit of lawful remedies. *Id.* ¶¶ 90–91. Plaintiff asserts that the threats were intended to intimidate and deter him from exercising his rights under the federal Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶ 92.

On or about November 13, 2025, Plaintiff applied online for consumer credit products from American Express, Citibank, and JPMorgan Chase. *Id.* ¶ 94. He received denials and/or adverse credit outcomes in connection with those applications. *Id.* ¶ 96. He received an American Express adverse action notice dated November 13, 2025, which reflected that American Express obtained and used Plaintiff's Experian-based credit score and which identified principal factors adversely affecting its credit decision, including the presence of a collection account and serious delinquency. *Id.* ¶¶ 97–98, 100.

**PROCEDURAL HISTORY**

Plaintiff initiated this case by complaint filed in New York State Supreme Court, New York County, on or about November 14, 2025. Dkt. No. 1 ¶ 1; Dkt. No. 2-1. The summons and complaint were served on Defendants on November 21, 2025. Dkt. No. 1 ¶ 2. The complaint alleged that Defendants used "a negative consumer collection tradeline to coerce payment of an alleged consumer surety indemnity obligation," and, in particular, that Defendants "attempted to

collect from Plaintiff an alleged debt owed to Hudson Insurance Company ["Hudson"], concerning a Nevada Department of Taxation surety bond claim." Dkt. No. 2-1 ¶¶ 1–2. Plaintiff explained that he had executed an indemnity agreement in favor of Hudson in relation to a surety bond Hudson had issued to the Nevada Department of Taxation and that after Hudson paid a claim against the bond on Plaintiff's behalf, Hudson retained Jomax to collect an alleged indemnity in the amount of $7,682 plus interest and fees. *Id.* ¶¶ 21–23. Plaintiff alleged that "[t]he alleged obligation arises, if at all, from a commercial surety indemnity agreement, not from a consumer loan, credit card, retail account, or other consumer transaction for personal, family, or household purposes," *id.* ¶ 24, but complained that it was improperly reported on Plaintiff's personal consumer credit files, *id.* ¶ 3. Plaintiff alleged that "Defendants mischaracterized the nature and legal status of the underlying obligation causing it to be evaluated by consumer creditors as though it were a delinquent consumer debt." *Id.* ¶ 33.

On December 18, 2025, Defendants removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal question jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1.

Plaintiff filed the AC untimely on December 20, 2025. Dkt. No. 8. By order of December 23, 2025, the Court stated that it would treat the AC as the operative complaint and gave Defendants leave to move against it. Dkt. No. 11.

On December 26, 2025, Plaintiff moved for a preliminary injunction. Dkt. No. 14. Defendants opposed the motion on the grounds, among others, that personal guarantees are not protected under the FDCPA. Dkt. No. 18 at 2. Defendants submitted evidence that Hudson had issued the surety bond on Plaintiff's behalf to cover unpaid sales taxes owed by Plaintiff's company, HMPL Worldwide, LLC, to the Nevada Department of Taxation and that, under the indemnity agreement, Plaintiff had agreed to personally indemnify Hudson for any amounts

Hudson paid under that surety bond. Dkt. No. 19-4 ¶¶ 5–6. When Plaintiff failed to reimburse Hudson for the principal payment of $5,500 that Hudson paid on Plaintiff's behalf pursuant to the bond, Hudson retained Jomax to collect the balance owed. *Id.* ¶¶ 8–9. The Court denied the motion for a preliminary injunction by Memorandum and Order dated February 9, 2026, finding that Plaintiff did not establish a likelihood of success or a risk of irreparable harm and that the balance of the equities and the public interest did not favor relief. Dkt. No. 26; *Washington v. Jomax LLC*, 2026 WL 353661 (S.D.N.Y. Feb. 9, 2026). The Court explained that the FDCPA applied only to debt that arose from a consumer transaction rather than a commercial one. *Jomax*, 2026 WL 353661, at *3–*4. "By the statute's plain language, it is not sufficient that the plaintiff be a natural person or even a consumer obligated to pay a debt. What is required is that 'the purported debt arose from a consumer transaction, rather than a commercial one.'" *Id.* at *3 (quoting *Paushok v. Ganbold*, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order)).

On January 16, 2026, Defendants filed this motion to dismiss the AC or, in the alternative, to transfer the case. Dkt. No. 25.[3] On March 12, 2026, Plaintiff filed a document entitled "Plaintiff's Notice of Conditional Consent to Transfer Venue In Lieu of Dismissal," stating that he did not oppose transfer generally but suggesting that the case be transferred to the United States District Court for the District of Nevada. Dkt. No. 27 at 3. New counsel for Plaintiff filed a notice of appearance on July 27, 2026. Dkt. No. 31. On July 28, 2026, Plaintiff—now represented by new counsel—filed a notice withdrawing his conditional consent

[3] Defendants initially filed a motion to dismiss the AC on January 9, 2026. Dkt. No. 19. That motion was accompanied by two declarations and an attorney certification. On January 12, 2026, Defendants filed a letter motion to withdraw and refile their motion to dismiss without the supporting declarations and attorney certification. Dkt. No. 22. The Court granted that motion on January 13, 2026, Dkt. No. 23, and Defendants' initial motion was deemed withdrawn, Dkt. No. 24.

to transfer. Dkt. No. 33. Simultaneously, counsel filed a letter motion to file a memorandum of law in opposition to the motion out of time. Dkt. No. 34. The letter motion attached the proposed opposition memorandum. Dkt. No. 34-1.[4] By order of August 13, 2026, the Court granted for good cause Plaintiff's motion to file the memorandum of law in opposition to the motion to dismiss out of time and further granted the request to withdraw the arguments regarding transfer at Dkt. Nos. 27 and 29. Dkt. No. 39. The Court gave Defendants until September 10, 2026, to file a reply memorandum of law in further support of the motion. *Id.* On September 10, 2026, Defendants filed a reply memorandum of law in further support of the motion to dismiss. Dkt. No. 40.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that

[4] Counsel represented that Plaintiff's prior counsel was disbarred from the practice of law in New York by order effective March 5, 2026. Dkt. No. 34 at 1.

discovery will reveal evidence [supporting the claim].” *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court considers not only the well-pleaded allegations of the complaint, but also documents incorporated by reference and “matters of which judicial notice may be taken.” *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff’d*, 847 F. App’x 35 (2d Cir. 2021) (summary order).

**DISCUSSION**

Plaintiff asserts 12 claims for relief. AC ¶¶ 112–246. He alleges a host of FDCPA violations. Plaintiff claims (1) Defendants failed to send Plaintiff the required written notice in violation of 15 U.S.C. § 1692g(a), *id.* ¶¶ 112–35; (2) Defendants failed to cease collection of the debt after Plaintiff informed Defendants he disputed the debt in violation of 15 U.S.C. § 1692g(b), *id.* ¶¶ 136–47; (3) Defendants used false, deceptive, and misleading representations and means to collect the debt in violation of 15 U.S.C. § 1692e, *id.* ¶¶ 148–63; (4) Defendants failed to communicate that the alleged debt was disputed in violation of 15 U.S.C. § 1792e(8), *id.* ¶¶ 166–77; (5) Defendants engaged in deceptive conduct in connection with the collection of a debt in violation of 15 U.S.C. § 1692e(10), *id.* ¶¶ 178–88; (6) Defendants used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f, *id.* ¶¶ 189–99; (7) Defendants engaged in harassment, oppression, or abuse in connection with the collection of a debt in violation of 15 U.S.C. § 1692d, *id.* ¶¶ 200–09; and (8) Defendants issued threats of retaliatory litigation and accusations of malicious conduct in connection with the collection of an alleged debt in violation of 15 U.S.C. § 1692e(5), *id.* ¶¶ 210–19. In addition to his FDCPA claims, Plaintiff alleges a violation of New York General Business Law § 349 and

asserts common-law claims for defamation, negligence, negligent misrepresentation, and prima facie tort. *Id.* ¶¶ 220–246.

Defendants argue that all of Plaintiff's claims should be dismissed for failure to state a claim. According to Defendants, Plaintiff's FDCPA claims fail because Plaintiff has not alleged a qualifying consumer debt or that Defendants were engaged in the collection of a debt, Dkt. No. 25-1 at 4–8, and Plaintiff's Section 349 claim fails because Plaintiff has not alleged materially misleading or deceptive conduct, *id.* at 14. Defendants further argue that Plaintiff's claim for defamation fails because Plaintiff has not identified a false statement made by Defendants, that his negligence/negligent misrepresentation claim fails because he has not alleged any duty or false statement, and that Plaintiff has failed to state a claim for prima facie tort. *Id.* at 15–17.[5]

## I. Plaintiff's Claims Under the FDCPA

To state a claim under the FDCPA, a plaintiff "must allege that 1) []he is a 'consumer' who allegedly owes the debt, or a person who has been the object of efforts to collect a consumer debt; 2) that the defendant collecting the debt is a 'debt collector;' and 3) that the defendant has engaged in an act or omission in violation of FDCPA requirements." *Owoyemi v. Credit Corp. Sol. Inc.*, 596 F. Supp. 3d 514, 520 (S.D.N.Y. 2022) (quoting *Keswani v. Athwal*, 2021 WL 4198235, at *3 (S.D.N.Y. Sept. 14, 2021)); *see also Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 409 (S.D.N.Y. 2023); *Iacovo v. Magguilli*, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025).

Defendants argue that each of Plaintiff's FDCPA claims must be dismissed because (1) Plaintiff fails to allege a consumer debt, Dkt. No. 25-1 at 2, 5–6; and (2) Plaintiff fails to allege

[5] Defendants also argue that Plaintiff has not stated a claim against Smith and that, assuming *arguendo* that he alleged a consumer debt, Plaintiff has not alleged plausible claims of violations of the FDCPA. *Id.* at 8–13. The Court does not address those arguments in light of the Court's conclusion that Plaintiff has not alleged a debt arising from a consumer obligation.

that the debt was in default when Defendants became involved or that Defendants otherwise meet the definition of debt collector, *id.* at 4. Defendants argue that the FDCPA does not apply to a commercial credit transaction, such as a personal guarantee issued to support a surety bond issued in connection with the payment of corporate tax obligations. *Id.* at 6.

The FDCPA does not cover every "debt" that a consumer might incur. The statute "applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (summary order) (quoting *Degrossiellier v. Solomon & Solomon, P.C.*, 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2021)); *see also Maleh v. United Collection Bureau, Inc.*, 287 F. Supp. 3d 265, 270 (E.D.N.Y. 2018) ("The FDCPA protects debtors in connection with the collection of certain debts, but not others."). The statute defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5), and defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt," *id.* § 1692a(3); *see Rosa v. Mandarich L. Grp., LLP*, 2024 WL 871209, at *5 (S.D.N.Y. Feb. 29, 2024). "[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006); *accord Scarola Malone & Zubatov LLP*, 638 F. App'x at 102.

Plaintiff does not dispute that "whether an obligation is a 'debt' depends . . . upon the purpose for which it was incurred." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 83 (2d Cir. 2018) (quoting *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)); *see* Dkt. No. 34-1 at 10 (Plaintiff's acknowledgment that 1692a(5) "turns on the subject and primary

purpose of the originating transaction, not merely on the later method used to collect the alleged obligation or on the fact that it was furnished to a consumer reporting agency"). He also does not dispute that, if the Court were to consider the allegations of his original complaint, it would be clear that the underlying obligation pursuant to which he incurred a debt was commercial and not consumer. Dkt. No. 34-1 at 10. According to that pleading, the debt arose from Plaintiff's guarantee of a bond that was issued in connection with a corporate tax obligation. *See* Dkt. No. 1. The money that was the subject of the transaction was not primarily for personal, family, or household purposes, but rather for corporate purposes. Plaintiff argues instead that the Court should deny Defendants' motion to dismiss and permit him to go forward on his FDCPA claims because he has removed from the operative AC the allegations that the debt was incurred on an indemnity agreement issued in connection with a surety bond used in connection with corporate taxes. Dkt. No. 34-1 at 7–11. Plaintiff's argument is facile. The law may not be so easily manipulated.

"Second Circuit law permits a plaintiff to omit in a subsequent pleading allegations previously made, even where the omission reflects a plaintiff's effort to avoid dismissal." *Bongiorno v. Baquet*, 2021 WL 4311169, at *14 n.11 (S.D.N.Y. Sept. 20, 2021) (quoting *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 2021 WL 1226984, at *30 (S.D.N.Y. Mar. 31, 2021)); *see also Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998) ("It is well-established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect." (internal quotation marks and alteration omitted)); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 600–01 (S.D.N.Y. 2013) (Nathan, J.) (discussing that original complaint may constitute an admission for purposes

of trial without being dispositive on a Rule 12(b)(6) motion); *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (Lynch, J.).

The omission of the averments that Plaintiff's underlying obligation was commercial, however, does not relieve Plaintiff of the obligation to plead affirmatively that Defendant's conduct occurred in connection with a qualifying consumer debt. A plaintiff "fail[s] to state a claim" under the FDCPA where he does "not include any factual allegations in his [c]omplaint to support the inference that the amount in dispute arose from a consumer transaction." *Scarola Malone & Zubatov LLP*, 638 F. App'x at 103; *see also In re Green*, 2020 WL 3412679, at *22 (Bankr. E.D.N.Y. June 18, 2020) ("The first element that [plaintiff] must allege to state a FDCPA claim is that the loan at issue constitutes consumer debt."); *Maleh*, 287 F. Supp. 3d at 270 (dismissing FDCPA claim where "[p]laintiff has failed to plead facts establishing that the debt at issue falls within the scope of the FDCPA's protection"). Here, Plaintiff does not allege, even in conclusory fashion, that the debt was personal or otherwise qualifying. *Cf. Thomas v. Law Offs. of Steven Cohen, LLC*, 2024 WL 21547, at *3 (W.D.N.Y. Jan. 2, 2024) (on motion to stay discovery pending motion to dismiss, assessing whether the plaintiff sufficiently alleged a qualifying debt and stating "I do not think it is enough for a complaint to state simply that 'upon information and belief, the debt is personal'"). Plaintiff avers that he "does not admit the existence, enforceability, amount, or legal status of any such obligation," AC ¶ 34, and argues that Defendants "cannot escape liability . . . by attaching a 'commercial' label," *id.* ¶ 38. *See* Dkt. No. 34-1 (arguing that the AC "does not admit that the alleged obligation secured HMPL Worldwide, LLC's sales-tax liabilities, does not admit that Hudson issued a particular bond on Plaintiff's behalf, does not admit that Hudson paid a valid bond claim, and does not admit the existence, enforceability, amount, or legal status of the alleged indemnity obligation"). But it is

not enough for Plaintiff to deny that the debt was commercial; he must allege it was consumer-oriented. Indeed, elsewhere in the AC, Plaintiff alleges that Defendants engaged in misrepresentations by, *inter alia*, "convey[ing], by implication and by placement, that the alleged obligation was . . . properly classified as a consumer collection debt," in effect admitting that the classification of the debt as a consumer debt was in error. AC ¶ 155.

The AC includes no other allegations that could support an inference that Plaintiff's obligation stemmed from a consumer transaction and qualifies as a debt under the FDCPA.[6] *Cf. Thomas*, 2024 WL 21547, at *3 (finding "several indicators" of consumer debt in case where plaintiff was wrongfully identified as debtor and had no personal knowledge of debt where debt was for relatively small amount, plaintiff alleged that true debtor was an individual, that the original debt-holder traded mostly in consumer debts, and that address associated with debtor's account was residential); *In re Green*, 2020 WL 3412679, at *22 (allegations supported inference of consumer debt where plaintiff alleged that he used the loan to purchase a property and "domiciles . . . as occupant of the Property"). Plaintiff solely argues that Defendants are not permitted to prove that the debt is not qualifying on a motion to dismiss and that, since the AC includes no allegations as to the nature of the debt, the FDCPA claims are not barred. Dkt. No.

[6] The AC alleges that "Defendants sought to induce payment from a natural person by invoking personal, family, or household credit consequences, regardless of any upstream commercial characterization asserted by Defendants." AC ¶ 38. This allegation does not support a claim of qualifying debt under the FDCPA. The question of whether a debt is qualifying is not where the effects of Defendants' conduct are felt—such as "personal, family, or household credit *consequences*," *id.* ¶ 38 (emphasis added)—but rather "depends . . . upon the purpose for which it was incurred." *Cohen*, 897 F.3d at 83; *see also Rosa*, 2024 WL 71209, at *5 (to be a qualifying debt, "[t]he debt must *arise from* certain types of transactions," namely those "for personal, family, or household purposes" (quoting 15 U.S.C. § 1692a(5) (emphasis added))). Plaintiff abandons this argument in his opposition and, as noted above, acknowledges that the character of a debt stems from "the purpose of the transaction from which the alleged obligation arose." Dkt. No. 34-1 at 9.

34-1 at 10–11. That argument misconstrues the pleading standard: a Rule 12(b)(6) motion does not permit defendants to dispute factual allegations of a complaint, but neither can a plaintiff argue that his claims survive because a dispositive fact is not pled. *See Iqbal*, 556 U.S. at 678; *Maleh*, 287 F. Supp. 3d at 271 (dismissing claim even where plaintiff pled no facts "affirmatively suggesting that the debt at issue is commercial in nature or otherwise outside the FDCPA's reach" because complaint only included conclusory allegation that debt was a consumer debt). Plaintiff has pled no facts supporting an inference of consumer debt, and all of his FDCPA claims accordingly fail.

Faced with this pleading deficiency, Plaintiff requests leave to amend "to allege any additional transaction-purpose facts that are supportable after the reasonable prefiling inquiry required by Rule 11." Dkt. No. 34-1 at 11. However, Plaintiff offers no proposed amendments that would fulfill the consumer debt requirement. Instead, Plaintiff broadly refers to potential allegations regarding "the particular money, property, insurance, or services that were the subject of the transaction and the primary purpose for which the transaction was undertaken." *Id.* This statement provides no plausible suggestion that amendment could fix the pleading deficiency. Plaintiff's claims under the FDCPA are therefore dismissed with prejudice. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured'" (internal quotation marks and citation omitted)); *Berkley Assurance Co. v. John H. Fisher, P.C.*, 771 F. Supp. 3d 292, 302 (S.D.N.Y. 2025) ("[E]ven under the lenient standard of Rule 15(a), a district court has discretion to deny a motion for leave to amend a pleading where the moving party 'fails to specify' how the proposed amendment 'would cure' any 'pleading deficiencies.'" (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014))).

## II. Supplemental Jurisdiction

Plaintiff also asserts claims of violations of New York General Business Law § 349 and common-law claims of defamation, negligence, negligent misrepresentation, and prima facie tort. "[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Id.* at 122 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Weighing those values, the Court will exercise supplemental jurisdiction over the remaining state-law claims. Plaintiff's allegations do not present "novel or unresolved questions of state law" that would implicate comity, *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003), and judicial economy and convenience is served by retaining and exercising supplemental jurisdiction, because both parties have fully briefed the motion to dismiss, including on the state-law claims, and as such, it is ripe for a decision. Finally, principles of fairness weigh in favor of retaining jurisdiction, as Plaintiff has already been afforded an opportunity to amend his complaint. *See Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 227 (E.D.N.Y. 2023), *aff'd*, 2024 WL 4404043 (2d Cir. Oct. 4, 2024) (summary order).

### A. Plaintiff's Claim under N.Y. Gen. Bus. Law § 349

Plaintiff's ninth count alleges a violation of New York General Business Law § 349. Plaintiff alleges that Defendants engaged in "coercive debt-collection conduct, threats, retaliation, failure to send required notices, and misuse of reputational harm as leverage" and that such conduct caused injury to Plaintiff in New York. AC ¶¶ 221, 225. Defendants argue that Plaintiff has failed to state a claim for relief because he does not dispute that the debt he owed is

still outstanding and makes only conclusory allegations of deceptive or misleading conduct. Dkt. No. 25-1 at 14.

To state a claim under Section 349, "a [private] plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrell & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)); *accord Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).[7] "[S]ection 349 is directed at wrongs against the consuming public. . . . Thus, as a threshold matter, plaintiffs claiming the benefit of section 349—whether individuals or entities . . . must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). The consumer-oriented conduct requirement "has been construed liberally." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). "The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; '[p]rivate contract disputes[] unique to the parties . . . would not fall within the ambit of the statute.'" *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (quoting *Oswego*, 647 N.E.2d at 744); *see Oswego*, 647 N.E.2d at 744 ("Plaintiff . . . need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large."). At the same time, a complaint that does not allege "any factual detail, such as examples of other affected consumers or similar instances of misconduct" is insufficient to support a claim that the

[7] Section 349 of the New York General Business Law ("N.Y. G.B.L.") provides: "Deceptive acts or practice in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. G.B.L. § 349(a).

defendant's conduct is consumer-oriented. *Garcia v. Kahan*, 2026 WL 1724309, at *2 (S.D.N.Y. June 15, 2026) (quoting *Timber Hill Enter., LLC v. Alta Equip. Co.*, 2026 WL 1346622, at *3 (N.D.N.Y. May 14, 2026)); *see also Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015) ("Plaintiffs must . . . allege that 'the same or similar actions [of defendants] are potentially (and quite likely) directed toward numerous other consumers.'" (internal quotation marks and citation omitted)).

Plaintiff makes only conclusory allegations of consumer-oriented conduct. He alleges that Defendants "employed standardized debt-collection and consumer credit-reporting practices directed at consumers and the consumer credit marketplace at large," AC ¶ 221, and that "Defendants' conduct had a broad impact on consumers because it involved furnishing and maintaining consumer collection tradelines used by creditors in underwriting and credit-decisioning," *id.* ¶ 222. But the allegation that Defendants used standardized debt collection practices cannot support a Section 349 claim without some identification of the aspects in which such practices were deceptive and the allegation that such deceptive practices were other than idiosyncratic to Plaintiff himself. Plaintiff fails to make such allegations. He also does not allege other affected consumers, similar instances of misconduct, or provide any facts to support a claim that Defendants' alleged wrongful conduct broadly impacted consumers. *See Garcia*, 2026 WL 1724309, at *2 (allegations that deceptive conduct was "done by Defendants systematically" and was "the type of conduct that has a broad impact on consumers at large" insufficient); *Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 198 (E.D.N.Y. 2001) (allegation "that the 'unlawful actions of the defendant have caused damage and injury to both the plaintiff herein and to its consumer customers' . . . is insufficient" to allege consumer-oriented conduct). Absent such factual allegations supporting an inference that the

dispute at issue is likely to affect consumers beyond Plaintiff, he has failed to allege consumer-oriented conduct. *Cf. Aghaeepour*, 2015 WL 7758894, at *15 (claim alleging that Defendants "routinely filed allegedly fraudulent lawsuits" supported plausible conclusion "that the conduct is a general practice that could affect additional consumers"); *Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (allegation that the law firm "'had been accused of fraudulent debt collection, and further had abandoned tens of thousands of debt collection lawsuits' supports [plaintiff's] argument that [defendant's] alleged conduct did affect or could affect a larger group of New York consumers").

Even assuming Plaintiff sufficiently alleged consumer-oriented conduct, however, Plaintiff has failed to allege misleading or deceptive conduct under Section 349. "Deceptive acts and practices require a showing that a consumer, acting reasonably under the circumstances, would have been misled by the defendant's conduct." *Schlessinger v. Valspar Corp.*, 817 F. Supp. 2d 100, 109 (E.D.N.Y. 2011) (citing *Oswego*, 647 N.E.2d at 745), *aff'd*, 723 F.3d 396 (2d Cir. 2013). A deceptive practice "need not reach the level of common-law fraud to be actionable" and can occur through "a representation or an omission." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000). Importantly, the alleged representation or omission "must be misleading *to a reasonable consumer*." *Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, at *6 (S.D.N.Y. Mar. 27, 2024) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)) (emphasis added).

Plaintiff identifies Defendants' misleading conduct as "the alleged failure to send validation notices and the continued furnishing and presentation of the account as undisputed after Defendants received Plaintiff's written dispute." Dkt. No. 34-1 at 20 (citing AC ¶¶ 61–87). Plaintiff's argument that the failure to send validation notices in accordance with 15 U.S.C.

§ 1692g(a) supports a claim under Section 349 is unavailing. That provision requires the debt collector, within five days after initial communication with a consumer regarding collection of a debt, to send the consumer a notice containing (1) the amount of debt, (2) the name of the creditor, (3) notice that the debt will be assumed valid if not disputed within thirty days, (4) notice that if disputed, the debt collector will obtain verification of the debt, and (5) notice that, upon written request, the debt collector will provide the name and address of the original creditor. 15 U.S.C. § 1692g. The failure to provide the above information, while it could be regarded as an omission, is not deceptive or misleading in any material way. Moreover, Plaintiff alleges that he disputed the debt, despite the lack of notice of his ability to do so, and alleges no injury from Defendants' alleged failure to provide the above notice. AC ¶¶ 80–81; *see Sandoval*, 2024 WL 1313826, at *6 ("The plaintiff . . . must show that the defendants' materially deceptive act caused the injury of which he complains." (internal quotation marks and citation omitted)).

As to the failure to present the debt as undisputed, Plaintiff has failed to demonstrate how Defendants' alleged conduct "[misled] the plaintiff in some material way." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citing *Stutman*, 731 N.E.2d at 612). Not all deceptive or misleading conduct is actionable under Section 349; to be actionable, the deception must be directed at consumers. Here, there is no plausible allegation that by failing to disclose that the debt is disputed Defendants somehow misled *Plaintiff* (or any other consumer) as to the nature of the debt. Plaintiff's claim sounds more squarely in a violation of General Business Law § 601(5), which prohibits creditors from "disclos[ing] or threaten[ing] to disclose information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact." N.Y. G.B.L. § 601(5). However, Section 601 does not provide a private right of action, and "[p]laintiffs cannot circumvent this result by claiming that a Section 601 violation is

actionable under Section 349." *Schlessinger*, 817 F. Supp. 2d at 109 (quoting *Conboy*, 241 F.3d at 258). Absent any allegations that would independently support a claim under Section 349, Plaintiff cannot rely on a Section 601 violation to bring a Section 349 claim. *Cf. Sigall v. Zipcar, Inc.*, 2014 WL 700331, at *4 (S.D.N.Y. Feb. 24, 2014) (even where alleged conduct sounds in a statutory violation for which there is no private right of action, "[p]laintiffs still may bring a claim under § 349 for deceptive acts or practices, provided it is a 'free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under' [statute for which there is no private right of action] and not merely an 'alleg[ation] that a violation of [that statute] necessarily constitutes a deceptive act under Section 349'" (first quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (S.D.N.Y. 2014); and then quoting *Conboy*, 241 F.3d at 258)). Here, Plaintiff has made no such allegation. Even assuming that Defendants falsely reported that the debt was undisputed, no reasonable consumer would be misled by such false reporting where that consumer initiated the dispute.

Plaintiff's Section 349 claim is therefore dismissed for failure to allege consumer-oriented conduct and for failure to allege conduct that would mislead a reasonable consumer. Plaintiff has supplied no proposed amendments that would support a Section 349 claim, and his claim is therefore dismissed with prejudice.

**B. Plaintiff's Claim for Defamation**

Plaintiff alleges that Defendants committed the tort of defamation or credit defamation. AC ¶¶ 228–34. The claim is based on the allegations that Defendants furnished information about Plaintiff to CRAs and that, as a result, the tradeline reported an alleged balance of approximately $7,682. *Id.* ¶¶ 51, 54. Plaintiff further alleges that, after Plaintiff disputed the alleged debt, Defendants continued to furnish and/or maintain the consumer collection tradeline and to publish and maintain the tradeline as a consumer collection account without dispute

notation. *Id.* ¶¶ 83–85. Defendants argue that Plaintiff fails to identify any false statement. Dkt. No. 40 at 10.

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or *per se* actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *see also Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 307 (S.D.N.Y. 2017) ("There are seven elements of defamation under New York law: (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing harm or constituting slander *per se*; and (7) not protected by privilege." (citing *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001))).[8]

Plaintiff's claim for defamation is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* "Under the FCRA, defamation claims 'with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency' are preempted." *Castro v. Newrez LLC*, 2026 WL 1361916, at *2 (2d Cir. May 15, 2026) (summary order) (quoting 15 U.S.C. § 1681h(e)). Section 1681t(b) further provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). *See Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir.

[8] Both parties refer to New York law. Dkt. No. 34-1 at 21; Dkt. No. 40 at 10. "[T]he parties' mutual decision to brief only New York law ends the [choice of law] inquiry." *Kwan v. Schlein*, 441 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (citing *3Com Corp. v. Banco do Brasil*, 171 F.3d 739, 743 (2d Cir. 1999)).

2011) (noting that 15 U.S.C. § 1681t(b)(1)(F) and 15 U.S.C. § 1681h(e) do not conflict, and that Section 1681t simply "accomplish[es] a more broadly-sweeping preemption"). Section 1681s-2, in turn, "relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information." *Comunale v. Home Depot*, *U.S.A., Inc.*, 328 F. Supp. 3d 70, 77 (W.D.N.Y. 2018) (quoting *Redhead v. Winston & Winston, P.C.*, 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002)). In particular, "[s]ubsection (a) forbids providing any information to a credit reporting agency if the furnisher of information is informed by the consumer that the information is inaccurate." *Kane v. Guaranty Residential Lending, Inc.*, 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005) (citing 15 U.S.C. § 1681s-2(a)). Put simply, a defamation claim based on a person or entity furnishing inaccurate information to a CRA is preempted by the FCRA.

Plaintiff's claim of defamation is based solely on the allegation that Defendants furnished false information to CRAs.[9] AC ¶¶ 51–54; Dkt. No. 34-1 at 21 (arguing that the alleged false statement is that "after receiving Plaintiff's actual dispute, Defendants allegedly continued publishing the account as undisputed" to CRAs). Plaintiff does not base his claim of defamation on statements made to any other type of organization. *See* AC ¶ 229 (noting that Defendants

[9] That Plaintiff's debt may be a commercial, rather than consumer, debt does not change the preemption analysis. Plaintiff alleges that Defendants furnished false information about him, a consumer, to CRAs, even though Plaintiff notified Defendants that the debt was disputed. *See* 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual."). The FCRA preempts any defamation claim arising out of false information furnished to a CRA regarding an individual. The nature of the falsity—whether due to falsely reported debt amount or debt character—is immaterial to the issue of preemption. *See Macpherson v. JP Morgan Chase Bank, N.A.*, 2010 WL 3081278, at *4 (D. Conn. Aug. 5, 2010) (claim based on allegations that "defendant furnished inaccurate information relating to him, a consumer, to Equifax, a consumer reporting agency, even though defendant had been notified by [plaintiff] that the specific information was inaccurate" is a claim "with respect to 'subject matter regulated under' 15 U.S.C. § 1681s-2"), *aff'd*, 665 F.3d 45 (2d Cir. 2011).

published statements to "consumer reporting agencies and users of consumer reports"). His claim is therefore squarely preempted by the FCRA. *See Macpherson v. JP Morgan Chase Bank, N.A.*, 2010 WL 3081278, at *1, *4 (D. Conn. Aug. 5, 2010) (plaintiff's claim of defamation against bank for reporting information to CRA despite knowledge of dispute preempted as conduct regulated by 15 U.S.C. § 1681s-2), *aff'd*, 665 F.3d 45 (2d Cir. 2011); *Rogers v. Equifax Info. Servs., LLC*, 2024 WL 2862363, at *3–4 (E.D.N.Y. June 6, 2024) (defamation claims premised on false information in credit report "are expressly preempted by the FCRA"); *Bocci v. Nationstar Mortg. LLC*, 2025 WL 2754479, at *16 (S.D.N.Y. Sept. 29, 2025) (claim of defamation based on allegation that defendant "reported the false account delinquency and foreclosure to CRAs" "is preempted by the FCRA to the extent it pertains to reports to consumer reporting agencies" (internal quotation marks and citation omitted)).

Moreover, Plaintiff fails to identify with adequate specificity a defamatory statement. *See Coleman v. Grand*, 158 F.4th 132, 144 (2d Cir. 2025) ("[U]nder New York's strict standard for pleading and proving defamation, [courts] must focus [their] analysis on the precise statements that [plaintiff] . . . identifies as defamatory" (citing *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993))); *see also Safranek v. Wegmans Food Mkts., Inc.*, 2026 WL 554774, at *4 (S.D.N.Y. Feb. 27, 2026) ("[T]o succeed on a claim for defamation, a plaintiff must plead the defamatory statements with some particularity" including "identify[ing] the allegedly defamatory statements" (internal quotation marks and citation omitted)). Plaintiff alleges that Defendants furnished information about him to CRAs and that, as a result, the consumer credit reports listed an outstanding balance of $7,682 under the "Collections" section with Jomax listed as the collector and Hudson Insurance Company as the original creditor. AC ¶¶ 51–54. Plaintiff does not allege the specific statements Defendants made to CRAs or that any

of the alleged information shared was false. He does not dispute that he owed $7,682, that Jomax was the collector, and that Hudson was the original creditor. Plaintiff's allegation of falsity depends instead on an omission: Defendants failed to report the account as disputed to the CRAs when, in fact, Plaintiff disputed it. Dkt. No. 34-1 at 21. Even assuming such an omission could be materially misleading so as to support a defamation claim, Plaintiff still must identify the statement creating such a material false impression. *See Satanic Temple, Inc. v. Newsweek Magazine LLC*, 661 F. Supp. 3d 159, 170 (S.D.N.Y. 2023) ("defamation-by-implication" claim is based on "misleading omission[] or false suggestion"); *see id.* at 170–71 (analyzing specific statements identified by plaintiff to see if those statements, while substantially true, create "false suggestions, impressions and implications"). Plaintiff has identified no such statements, either in his complaint or his opposition requesting leave to amend. *See* Dkt. No. 34-1 at 21.

Plaintiff's claim for defamation is accordingly dismissed with prejudice.

**C. Plaintiff's Claim for Negligence and Negligent Misrepresentation**

Plaintiff's eleventh claim is for negligence and negligent misrepresentation. AC ¶¶ 235–40. Plaintiff alleges that Defendants owed him common-law duties of reasonable care and violated those duties by engaging in misleading, coercive, and retaliatory collection conduct. *Id.* ¶¶ 236–37. Defendants argue that Plaintiff does not plead the existence of a duty, the making of a false statement, or reliance. Dkt. No. 25-1 at 15–16.

A plaintiff seeking to allege a defendant's negligence under New York law must plead: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 675 (S.D.N.Y. 2024) (quoting *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)). "[A] threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,

578 F. Supp. 3d 511, 552 (S.D.N.Y. 2022) (quoting *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002)). "Whether a defendant owes a duty of care to a plaintiff 'is a question of law that the Court may properly determine on a motion to dismiss.'" *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 86–87 (S.D.N.Y. 2023) (quoting *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 27 (S.D.N.Y. 2009) (Nathan, J.), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) (summary order)).[10]

To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anshutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). "Under the 'duty' element, 'New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Id.* (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)); *see J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007).

As an initial matter, to the extent Plaintiff's claims are based on negligent reports to CRAs, such claims are preempted by the FCRA. 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to

[10] Both parties rely on New York substantive law. Dkt. No. 25-1 at 15–16; Dkt. No. 34-1 at 22.

a consumer reporting agency."); *see, e.g.*, *Rogers*, 2024 WL 2862363, at *4 (dismissing claim of negligence premised on CRA's alleged failure to prevent incomplete and inaccurate information as "expressly preempted by the FCRA"); *Holmes v. Experian Info. Sols., Inc.*, 507 F. App'x 33, 35 (2d Cir. 2013) (summary order) (affirming dismissal of negligence claim against CRA as preempted by the FCRA).

As to Plaintiff's remaining allegations—that Defendants breached their duty to Plaintiff by engaging in misleading, coercive, and retaliatory collection conduct, AC ¶ 237—Plaintiff does not identify any duty Defendants owed to Plaintiff that was breached by their debt collection efforts. To allege a duty of care, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001), *opinion after certified question answered*, 264 F.3d 21 (2d Cir. 2001). Thus, a business owes a duty of care to its customers to "maintain its premises in a reasonably safe condition," *see, e.g.*, *Salazar v. Wal-Mart Stores E., LP*, 2024 WL 1995240, at *3 (S.D.N.Y. May 6, 2024) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)), and "'[p]rofessionals,' . . . can become liable in tort if they fail to exercise reasonable care," *Essilor Int'l SAS*, 650 F. Supp. 3d at 87 (quoting *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992)). However, financial institutions do not owe a duty of care to their customers beyond the obligations established in contract. *See Essilor Int'l SAS*, 650 F. Supp. 3d at 87 ("[A] breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated" and New York courts do not find financial institutions to be "professionals" carrying a duty of care beyond contractual obligations); *id.* (holding bank did not owe plaintiffs a duty to

monitor and report overdrafts). The relationship asserted here—between debtor and debt collector—is more tenuous than that between a bank (or any other business) and its customer. There is no relationship between the two supporting such a duty; in contrast, the parties generally act in opposition to one another.[11] *Cf. Sanchez v. Ehrlich*, 2018 WL 2084147, at *7 (S.D.N.Y. Mar. 29, 2018) ("[A]n attorney does not owe a duty of care to an adversary." (quoting *Crews v. City of Nassau*, 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009))). Absent a duty, there can be no claim of negligence.

Plaintiff further does not identify, in furtherance of his negligent misrepresentation claim, any special relationship giving rise to a duty on the part of Defendants to provide Plaintiff accurate information, or any reasonable reliance on Defendants' information. Plaintiff's claim of negligent misrepresentation is based on the same relationship as his negligence claim; since Plaintiff has not established a duty of care, his negligent misrepresentation claim, which "requires 'the existence of a special or privity-like relationship,'" necessarily fails. *See AHW Inv. P'ship v. Citigroup, Inc.*, 980 F. Supp. 2d 510, 524 (S.D.N.Y. 2013) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011)); *see also Mandarin Trading*,

---

[11] Some courts have found that "debt collectors owe debtors a duty of reasonable care in the collection of their debts," but this "duty of care" is treated as coterminous with the duties imposed by the FDCPA. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013) (summary order); *see id.* (defining duty of care by scope of the FDCPA, and finding no breach where plaintiff demonstrated no statutory violation). In *Colorado Cap. v. Owens*, 227 F.R.D. 181, 191–92 (E.D.N.Y. 2005), the court found a standalone duty of care supporting a claim of negligence where the plaintiff's FDCPA claims were barred by the statute of limitations. In support of this duty, the court cited to the language of the Second Circuit's decision in *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir. 1996), which described the purposes of the FDCPA as "shield[ing]" consumers against the "overly zealous debt collector" and creating a new standard wherein debt collectors "may not [collect debts] today in a manner that prevents consumers from exercising their legal rights." *Colorado Cap.*, 227 F.R.D. at 191–92. However, the Second Circuit described the duties imposed by virtue of the FDCPA; it did not pronounce a broader duty of care owed by debt collectors to debtors outside of the statute.

944 N.E.2d at 1109 (special relationship requires "special position of confidence and trust with the injured party" (internal quotation marks and citation omitted)).

The sole argument that Plaintiff makes in support of these claims is a request for leave to amend "if discovery supplies a good-faith factual basis for amendment." Dkt. No. 34-1 at 22. Plaintiff provides no indication as to potential amendments that could cure the pleading deficiency or identify a cognizable duty owed by Defendants. These claims are therefore dismissed with prejudice. *See Grand Medford Estates, LLC v. Town of Brookhaven*, 2024 WL 4440231, at *4 (2d Cir. Oct. 8, 2024) (summary order) (affirming denial of leave to amend where plaintiff failed to "indicate what their potential amendments would be and did not explain the bases for any potential amendments" (internal quotation marks and citation omitted)).

**D. Plaintiff's Claim for Prima Facie Tort**

The elements of a claim of prima facie tort are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876, 882 (2d Cir. 1988). "Prima facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy, and not to provide a catch all alternative for every cause of action which is not independently viable." *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 232 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). To plead a claim in prima facie tort, a plaintiff must allege that "malevolence is the sole motive for defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, [that] defendant [has] act[ed] from 'disinterested malevolence.'" *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 468 (N.Y. 1983) (quoting *Am. Bank & Tr. Co. v. Fed. Rsrv. Bank of Atlanta*, 256 U.S. 350, 358 (1921)); *see also Allen v. Cox*, 2011 WL 2436705, at *3 (S.D.N.Y. June 16, 2011) ("[T]he

complaint must allege that the defendant was motivated solely by the malicious intention to injure the plaintiff."); *Greater Buffalo Accident & Inj. Chiropractic, P.C. v. GEICO Cas. Co.*, 107 N.Y.S.3d 599, 601 (4th Dep't 2019) ("[T]he prima facie tort cause of action cannot stand because, although the complaint alleged that defendant 'acted maliciously' and 'with disinterested malice,' it did not allege that defendant's 'sole motivation was "disinterested malevolence."'" (quoting *Lindner*, 451 N.E.2d at 468)). "[M]otives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence, even if mixed with malice or personal animus, bars recovery under prima facie tort." *Belda v. Doerfler*, 2015 WL 5737320, at *12 (S.D.N.Y. Sept. 30, 2015) (quoting *Rodgers v. Grow-Kiewit Corp.-MK*, 535 F. Supp. 814, 816 (S.D.N.Y. 1982)); *accord Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 477 (S.D.N.Y. 2021).[12]

Plaintiff acknowledges that prima facie tort requires disinterested malevolence and that the AC alleges that Defendants were motivated, at least in part, to obtain payment. Dkt. No. 34-1 at 22. Plaintiff therefore does not oppose dismissal of his claim for prima facie tort, but requests that any dismissal be without prejudice. *Id*. The viability of Plaintiff's claims is properly judged by the amended pleading and he has not identified any facts he could allege in a further amendment that would support disinterested malevolence. Thus, Plaintiff's claim for prima facie tort is dismissed with prejudice. *See Berkley Assurance Co.*, 771 F. Supp. 3d at 302 (dismissing with prejudice where plaintiff failed to specify how amendment would cure pleading deficiencies).

---

[12] The parties assume that New York law applies to this claim. *See* Dkt. No. 25-1 at 17 (citing New York law); Dkt. No. 34-1 at 22 (acknowledging elements under New York law).

## III. Motion to Transfer

Defendants moved to dismiss the AC with prejudice or, in the alternative, to transfer venue. Since the Court grants Defendants' motion to dismiss with prejudice, their alternative motion need not be addressed. *See Johnson v. Ensite USA, Inc.*, 2022 WL 463381, at *1 n.1 (S.D.N.Y. Feb. 15, 2022) ("Because the Court grants Defendant's motion to compel arbitration, the Court need not and does not address Defendant's arguments in support of those alternative motions," which include a motion to transfer venue).

## CONCLUSION

Plaintiff's Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to close Dkt. No. 25 and enter judgment for Defendants.

SO ORDERED.

Dated: September 25, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge